**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 25-290** |
| **NELSON BANKS** | **SECTION: D (1)** |

## ORDER AND REASONS

Before the Court is a Motion to Dismiss Indictment, filed by defendant, Nelson Banks.[1] Banks has been charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1) (hereafter, "§ 922(g)(1)"), and he asserts an as-applied challenge to its constitutionality under the Second Amendment. The Government opposes the Motion,[2] and Banks has filed a Reply.[3] The matter was submitted on the briefs by the parties.[4]

After careful consideration of the parties' memoranda and the applicable law, the Court **DENIES** the Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On December 18, 2025, Nelson Banks was indicted by a Grand Jury in a one-count Indictment for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8).[5] The Indictment charges that Banks knowingly possessed a firearm after having been convicted of a crime punishable by more than one year of

[1] R. Doc. 39.
[2] R. Doc. 44.
[3] R. Doc. 45.
[4] R. Doc. 40.
[5] R. Doc. 1.

imprisonment, specifically a 2024 Louisiana state court conviction for simple kidnapping in violation of La. R.S. 14:45.[6] Banks is currently awaiting trial on his federal felon in possession of a firearm charge.[7] Banks filed the instant Motion to Dismiss Indictment on June 11, 2026.[8]

Banks asserts that the Indictment should be dismissed because 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him under the Second Amendment or, alternatively, that the Government should be required to identify the historical analogue it contends supports his permanent disarmament under § 922(g)(1).[9] Banks asserts that his prior conviction arose from conduct he committed as a juvenile, and that the case originated in the juvenile justice system and was transferred to adult court.[10] Banks asserts that he pleaded guilty and received a sentence of five years' imprisonment, fully suspended, with three years of supervised probation under Louisiana Code of Criminal Procedure article 893.[11] Banks claims that he was on supervised probation at the time of the alleged offense giving rise to the instant charge.[12]

Banks advises that in *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, the Supreme Court held that when the Second Amendment's plain text covers the conduct at issue, the Government must "demonstrate that the regulation is consistent

---

[6] *Id.* at p. 1.
[7] Trial is set for September 14, 2026. *See* R. Doc. 43.
[8] R. Doc. 39.
[9] *Id.*
[10] R. Doc. 39-1 at p. 1.
[11] *Id.*
[12] *Id.*

with this Nation's historical tradition of firearm regulation."[13] Banks then cites *United States v. Diaz*, a post-*Bruen* decision from the Fifth Circuit where the court held that felons are among "the people" protected by the Second Amendment, and that to survive an "as-applied" challenge to § 922(g)(1), "the government must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to [the defendant]."[14] Banks contends that the inquiry "proceeds on a felony-by-felony basis, and the Court may consider only the actual predicate conviction, not the originally charged offense and not the conduct underlying the instant offense."[15] Banks acknowledges that the Fifth Circuit in *United States v. Contreras* held that § 922(g)(1) does not violate the Second Amendment as applied to a defendant who possesses a firearm while serving a term of probation or supervised release.[16] Banks, however, argues that *Contreras* does not end the inquiry because it did not address, and expressly left open, whether the supervision analogue retains its constitutional force when the underlying predicate conviction itself lacks a founding-era historical analogue.[17]

Banks asserts that *Bruen* and *Diaz* require the Government to identify a historical law, or a closely analogous historical tradition, that supports permanently disarming someone with his specific criminal history – a single conviction, for a reduced charge, arising from conduct committed as a juvenile, processed through the

---

[13] *Id.* at pp. 1–2 (quoting *Bruen*, 597 U.S. 1, 29 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022)) (citation modified).
[14] R. Doc. 39-1 at p. 2 (quoting *Diaz*, 116 F.4th 458, 465–67 (5th Cir. 2024)) (citation modified).
[15] R. Doc. 39-1 at p. 2 (citing *Diaz*, 116 F.4th at 467).
[16] R. Doc. 39-1 at p. 2 (citing *Contreras*, 125 F.4th 725 (5th Cir. 2025)).
[17] R. Doc. 39-1 at p. 2.

modern juvenile justice transfer system, and resolved without any term of incarceration – and Banks argues the Government has failed to make that showing.[18] Banks maintains that the Government must address the following two issues: (1) whether there is a founding-era tradition of permanently disarming individuals whose sole predicate conviction arose from conduct committed as a juvenile, particularly where the conviction resulted in no incarceration and was the product of a modern juvenile-transfer mechanism that did not exist at the founding-era; and (2) whether the supervision-based historical analogue recognized in *Contreras* can constitutionally extend to a predicate conviction arising from juvenile conduct processed through a modern transfer mechanism that may itself lack sufficient historical grounding.[19] Banks asks the Court to either dismiss the Indictment as unconstitutional under the Second Amendment because the Government has not identified a historical tradition supporting Banks' permanent disarmament or, alternatively, order the Government to identify the historical law or tradition that it contends justifies the permanent disarmament of someone with Banks' criminal history and grant Banks leave to submit supplemental briefing addressing the historical analogues identified by the Government.[20]

The Government does not dispute the circumstances surrounding Banks' prior felony conviction or that the Government bears the burden of demonstrating that § 922(g)(1) is constitutional as applied to Defendant under *Bruen*.[21] The Government,

[18] *Id.* at pp. 2–3.
[19] *Id.* at pp. 3–4.
[20] *Id.* at p. 4.
[21] R. Doc. 44 at pp. 1–3.

however, asserts that Banks' challenge to § 922(g)(1) fails because he was on probation at the time of his arrest in this matter, and the Fifth Circuit held in *United States v. Giglio* that the Constitution allows the Government to disarm individuals who are carrying out criminal sentences.[22] The Government argues that, as in *Giglio*, Banks was serving a probationary sentence at the time of his arrest for the conduct set forth in the Indictment, rendering § 922(g)(1) constitutional as applied to Banks.[23] The Government also claims that Banks' predicate conviction for simple kidnapping in violation of La. R.S. 14:45 is the type of predicate offense that can support a violation of § 922(g)(1). The Government cites *United States v. McCree*, a Fifth Circuit case in which the court held that the defendant's prior conviction for aggravated battery under Louisiana law "indicates that he poses a threat to public safety and the orderly functioning of society. The regulation of such person's ability to possess a firearm is consistent with this Nation's historical tradition of firearm regulation and punishment of people who have been convicted of violent offenses."[24] The Government claims that in reaching this conclusion, the Fifth Circuit pointed out that aggravated battery qualifies as a crime of violence under Louisiana law.[25]

Finally, the Government asserts that Banks' age at the time of his prior conviction "is not a factor to be considered in the analysis required by the Fifth Circuit case law regarding the constitutionality of § 922(g)(1), as applied."[26] The Government

---

[22] *Id.* at p. 3 (citing *Giglio*, 126 F.4th 1039, 1044 (5th Cir. 2025)).
[23] R. Doc. 44 at pp. 3–4 (citing *Giglio*, 126 F.4th at 1045).
[24] R. Doc. 44 at pp. 4–5 (quoting *McCree*, 160 F.4th 641, 645 (5th Cir. 2025)) (citation modified).
[25] R. Doc. 44 at pp. 4–5.
[26] *Id.* at p. 5.

argues that Banks' age "impacts neither the 'why' nor the 'how' of the test," and that Banks "has not cited any law to support the argument that it does."[27] The Government claims that the Fifth Circuit in *McCree* held that a juvenile adjudication – a finding of delinquency for conduct committed by a juvenile and adjudicated in juvenile court – provided a "constitutionally-adequate predicate for a § 922(g)(1) conviction."[28] The Government contends that if such an adjudication is a permissible predicate for § 922(g)(1), then a conviction in adult criminal court for juvenile conduct would also be a proper predicate.[29]

In response, Banks asserts that the Government's Opposition brief fails to identify a founding-era tradition of permanently disarming a person who committed an offense as a juvenile.[30] Banks contends that the Government raises three arguments: (1) that supervision status alone forecloses his § 922(g)(1) as-applied challenge; (2) that simple kidnapping is a valid § 922(g)(1) predicate offense; and (3) that the juvenile nature of the predicate conduct is legally irrelevant.[31] Banks argues that the third argument "is the logical place to start because counsel believes that it is dispositive of the other two."[32] Banks concedes the Government's observation that there was no separate juvenile justice system in the founding-era and that juveniles above the age of seven could be subject to the full weight of adult criminal law.[33] Banks, however, asserts that while adult violent offenders were subject to capital

[27] *Id.*
[28] *Id.* at pp. 5–6 (citing *McCree*, 160 F.4th at 645).
[29] R. Doc. 44 at p. 6.
[30] R. Doc. 45 at p. 1.
[31] *Id.*
[32] *Id.*
[33] *Id.* at p. 2.

punishment at that time, juveniles were not, so civil disarmament as a lesser modern analogue to founding-era capital punishment does not apply to a juvenile offender.[34] Banks disputes that *McCree* is controlling, arguing that it only concerned an as-applied challenge to § 922(g)(1) based upon a predicate offense of aggravated battery, and did not address whether there is a founding-era tradition of permanently disarming a person who committed an offense as a juvenile.[35] Banks argues that, "[t]he fact that the defendant in *McCree* happened to have a juvenile adjudication in his criminal history (noted only parenthetically in the dissent, not the majority opinion) does not mean the Fifth Circuit considered and rejected a challenge grounded in the absence of a founding-era tradition of permanent juvenile disarmament."[36] Banks further claims that the Government's reliance upon *United States v. Giglio* is misplaced because the holding "rests entirely on the premise that the underlying conviction is one the Founders would have recognized: an adult criminal conviction arising from legal processes with founding-era counterparts."[37] Finally, Banks contends that the fact that simple kidnapping is a crime of violence under La. R.S. 14:2 is not a substitute for the Government establishing a founding-era tradition of permanently disarming a person who committed that offense as a juvenile.[38]

---

[34] *Id.* at pp. 3–4.
[35] *Id.* at p. 5.
[36] *Id.*
[37] *Id.* at pp. 5–6 (citing *Giglio*, 126 F.4th 1039 (5th Cir. 2025)).
[38] R. Doc. 45 at p. 7.

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(1) provides that, "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." The Fifth Circuit has held that, "[t]he propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact."[39] "If a question of law is involved, then consideration of the motion is generally proper."[40]

The Second Amendment guarantees that, "the right of the people to keep and bear Arms, shall not be infringed."[41] This right, however, "is not unlimited."[42] In *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, the Supreme Court announced a two-step framework for determining whether a regulation is consistent with the Second Amendment.[43] First, courts must consider whether the Second Amendment's "plain text covers an individual's conduct."[44] If it does, "the Constitution presumptively protects the conduct."[45] At the second step, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."[46] According to the Supreme Court, "[o]nly if a firearm

---

[39] *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) *abrogated on other grounds as recognized* by *Untied States v. Garcia*, 707 Fed.Appx. 231 (5th Cir. 2017)) (citation modified).
[40] *Fontenot*, 665 F.3d at 644 (quoting *Flores*, 404 F.3d at 324) (citation modified).
[41] U.S. CONST. amend. II.
[42] *District of Columbia v. Heller*, 554 U.S. 570, 626, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).
[43] 597 U.S. 1, 17, 24, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022).
[44] 597 U.S. at 24, 142 S.Ct. 2111.
[45] *Id.*
[46] 597 U.S. at 17, 142 S.Ct. 2111.

regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'"[47]

While some Circuits have determined that § 922(g)(1) is constitutional as applied to all felons, the Fifth Circuit has recognized that § 922(g)(1) could be unconstitutional as applied to certain predicate felonies.[48] The Fifth Circuit has also diverged from other Circuits by not embracing "the view that courts should 'look beyond' a defendant's predicate conviction 'and assess whether the felon's history or characteristics make him likely to misuse firearms.'"[49] Although the Fifth Circuit has "already held that '[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1),' thus satisfying the first step in *Bruen*, the approach to the second step—justifying the regulation—remains the task at hand."[50] According to the Fifth Circuit, "the government bears the heavy burden to show that the challenged law is relevantly similar to laws that our tradition is understood to permit."[51]

## III. ANALYSIS

At the outset, the Court notes that Banks has not raised a facial challenge to

---

[47] *Id.* (quoting *Konigsberg v. State Car of Cal.*, 366 U.S. 35, 50, n.10, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961)).
[48] *United States v. Hembree*, 165 F.4th 909, 911 (5th Cir. 2026) (citing *United States v. Diaz*, 116 F.4th 458, 470 n.4 (5th Cir. 2024) (permitting "as-applied challenges by defendants with different predicate convictions")).
[49] *Hembree*, 165 F.4th at 912 (quoting *United States v. Kimble*, 142 F.4th 308, 318 (5th Cir. 2025)).
[50] *Hembree*, 165 F.4th at 912 (quoting *Diaz*, 116 F.4th at 467).
[51] *Hembree*, 165 F.4th at 912 (quoting *United States v. Mitchell*, 160 F.4th 169, 177 (5th Cir. 2025)) (citation modified).

§ 922(g)(1). Banks only asserts that § 922(g)(1) is unconstitutional as applied to him. Regarding the first step of the *Bruen* analysis, Banks is clearly a person covered by the Second amendment. The Fifth Circuit has held that, "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)."[52] As such, the Court turns to the second step of the *Bruen* analysis, which requires the Government to demonstrate that, "regulating [Banks'] possession of a firearm is consistent with the Nation's historical tradition of disarming someone with a criminal history analogous to his."[53]

In its Opposition brief, the Government correctly points out that two recent Fifth Circuit cases support its position that, "the government may disarm those who continue to serve sentences for felony convictions."[54] First, in *United States v. Contreras*, the Fifth Circuit considered the predicate offense of "user [of marijuana] in possession of a firearm,"[55] and held that, "there is a tradition of regulating Contreras' predicate offense because he *was* intoxicated while he possessed the gun. This means 'the challenged regulation is consistent with the principles that underpin our regulatory tradition.'"[56] The Fifth Circuit also found that, "limitations on the

---

[52] *Diaz*, 116 F.4th at 467.
[53] *United States v. Schnur*, 132 F.4th 863, 867 (5th Cir. 2025) (citing *New York State Rifle & Pistol Ass'n., Inc. v. Bruen*, 597 U.S. 1, 24, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022)).
[54] R. Doc. 44 at pp. 3–4 & n.1 (citing *United States v. Giglio*, 126 F.4th 1039, 1043–45 (5th Cir. 2025); *United States v. Contreras*, 125 F.4th 725, 732 (5th Cir. 2025) (quoting *United States v. Goins*, 118 F.4th 794, 805 (6th Cir. 2024) (Bush, J., concurring in part) (citing *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024))) ("limitations on the constitutional right to bear arms while on probation are supported by our nation's historical tradition of firearm forfeiture laws, which temporarily disarmed persons while they completed their sentences.")) (citation modified). Accord *United States v. Winding*, 817 F.3d 910, 916 (5th Cir. 2016) ("Probationers do not enjoy the absolute liberty to which every citizen is entitled.") (citation modified).
[55] *Contreras*, 125 F.4th at 727 & 730.
[56] *Id.* at 732 (quoting *United States v. Rahimi*, 602 U.S. 680, 681, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024)).

constitutional right to bear arms while on probation are supported by our nation's historical tradition of firearm forfeiture laws, which temporarily disarmed persons while they completed their sentences."[57] The court explained that, "[t]his historical practice of disarming a convict during his sentence . . . is like temporarily disarming a convict on supervised release. After all, the defendant receives a term of supervised release thanks to his initial offense, and . . . it constitutes a part of the final sentence for his crime."[58] The *Contreras* court concluded that, "[t]aken together, we have a history and tradition of punishing felons quite harshly, including taking away their weapons while they complete their sentence, and a history and tradition of disarming those that are intoxicated."[59]

About a week later, in *United States v. Giglio*, the Fifth Circuit considered another as-applied challenge to § 922(g)(1) by a defendant with a predicate offense of aggravated assault who was arrested and convicted of being a felon in possession while on supervised release for the previous felony.[60] Without considering the predicate offense, the Fifth Circuit held that, "[b]ecause our history demonstrates a tradition of disarming individuals serving criminal sentences, the government could regulate Giglio's firearm use without offending the Second amendment."[61] In reaching this conclusion, the Fifth Circuit agreed with the Third and Sixth Circuits that, "the government may disarm those who continue to serve sentences for felony

[57] *Contreras*, 125 F.4th at 732 (quoting *Goins*, 118 F.4th at 805 (Bush, J., concurring in part) (citing *Moore*, 111 F.4th 266)) (citation modified).
[58] *Contreras*, 125 F.4th at 732 (quoting *Moore*, 111 F.4th at 271–72) (citation modified).
[59] *Contreras*, 125 F.4th at 732–33.
[60] 126 F.4th 1039, 1040–41 (5th Cir. 2025).
[61] *Id.* at 1041.

convictions."[62] The *Giglio* court also specifically agreed with the Third and Sixth Circuits that founding-era laws establish "a historical tradition wherein convicts could be required to forfeit their weapons and were prevented from reacquiring arms until they had finished serving their sentences."[63]

The Fifth Circuit in *Giglio* recognized that, "not all § 922(g)(1) convictions fit squarely within this tradition. But Giglio's does. The *lynchpin* of our analysis is that Giglio, at the time of his conviction, was serving a sentence for a prior conviction."[64] The court further reasoned that, "[b]olstering this conclusion is the unremarkable proposition that those subject to criminal sentences do not enjoy the full panoply of rights guaranteed by our Constitution."[65] The *Giglio* court explained that, "[i]t is inherent in the very nature of probation . . . that probationers do not enjoy the absolute liberty to which every citizen is entitled,"[66] and that, "we have recognized that those on supervised release enjoy even less of the average citizen's absolute liberty than do probationers."[67] The court acknowledged that, "[u]nder this principle, courts routinely recognize the government's ability to deprive these individuals of rights in ways that would likely be unconstitutional if applied outside the context of

---

[62] *Id.* at 1044. *See Id.* at 1043–44 (citing *United States v. Moore*, 111 F.4th 266 (3d Cir. 2024); *Untied States v. Goins*, 118 F.4th 794 (6th Cir. 2024)).
[63] *Giglio*, 126 F.4th at 1044 (quoting *Moore*, 111 F.4th at 271).
[64] *Giglio*, 126 F.4th at 1045 (citing *Goins*, 118 F.4th at 807 (Bush, J., concurring) (emphasizing that Goins's "conviction for illegal possession of a firearm may be upheld simply because Goins was on probation at the time of his offense.")) (emphasis added).
[65] *Giglio*, 126 F.4th at 1045 (citing *Goins*, 118 F.4th at 803–04; *id.* at 807 & n.1 (Bush, J., concurring)).
[66] *Giglio*, 126 F.4th at 1045 (quoting *United States v. Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001)) (citation modified).
[67] *Giglio*, 126 F.4th at 1045 (quoting *United States v. Winding*, 817 F.3d 910, 916 (5th Cir. 2016)) (citation modified).

punishment."[68] The *Giglio* court ultimately concluded that, "[t]aken together, all of this indicates that the government may more readily deprive an individual of his constitutional rights when he is subject to an ongoing criminal sentence. And we do not see any reason why the Second Amendment ought to be treated any differently."[69] Further, "[e]arly American history reveals that individuals could be disarmed while carrying out such sentences, and modern practice comports with that principle in the gun-rights context and otherwise."[70] As such, the Fifth Circuit in *Giglio* held that, "the government was justified in depriving Giglio of his Second Amendment rights at the time of his arrest, and we uphold the constitutionality of § 922(g)(1) as applied to him."[71]

Here, it is undisputed that Banks was convicted on April 22, 2024 of simple kidnapping, in violation of La. R.S. 14:45, which arose from conduct Banks committed as a juvenile, that the case originated in the juvenile justice system, and that it was transferred to adult court.[72] Thus, Banks was adjudicated as an adult. It is also undisputed that Banks received a suspended sentence of five years' imprisonment without hard labor and a probationary term of three years, and that Banks was serving that probationary term at the time of his arrest for violating § 922(g)(1).[73]

---

[68] *Giglio*, 126 F.4th at 1045 (quoting Kate Weisburd, *Rights Violations as Punishment*, 111 Calif. L. Rev. 1305, 1320 (2023)) (citation modified); *see also Knights*, 534 U.S. at 119, 122 S.Ct. 587 ("Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.").
[69] *Giglio*, 126 F.4th at 1045.
[70] *Id.* at 1045.
[71] *Id.* at 1045–46.
[72] R. Doc. 39-1 at p. 1; R. Doc. 44 at p. 1.
[73] R. Doc. 39-1 at p. 1; R. Doc. 44 at p. 1.

Because Banks "was serving a sentence for a felony conviction when he committed the indicted offense, and because the Fifth Circuit has established that there exists a historical tradition justifying the disarmament of those serving time for a felony offense,"[74] the Court finds that § 922(g)(1) is constitutional as applied to Banks and denies Banks' Motion to Dismiss on this ground.

In his Reply brief, Banks argues that the Government's reliance on *Giglio* is misplaced as "one cannot bootstrap a historically grounded doctrine onto a historically groundless predicate."[75] Despite Banks' assertion to the contrary, the holding in *Giglio* does not rest "entirely on the premise that the underlying conviction is one the Founders would have recognized: an adult criminal conviction arising from legal processes with founding-era counterparts."[76] As set forth above, the *Giglio* court expressly held that, "[t]he lynchpin of our analysis is that Giglio, at the time of his conviction, was serving a sentence for a prior conviction."[77] The court explained that, "[a]s we have stressed, our holding turns on the fact that Giglio was still on supervised release at the time of his arrest."[78] Although not acknowledged by Banks in either his Motion or Reply brief, the Fifth Circuit in *Giglio* held that, "our history demonstrates a tradition of disarming individuals serving criminal sentences," without reference to the predicate offense, thereby allowing the Government to regulate Banks' firearm use without offending the Second Amendment.[79] As such,

---

[74] *United States v. Lee*, Crim. A. No. 5:24-cr-08-DCB-ASH, 2025 WL 1261609, at *2 (S.D. Miss. April 30, 2025) (Bramlette, III, J.)
[75] R. Doc. 45 at p. 5
[76].*Id.* at p. 6.
[77] *United States v. Giglio*, 126 F.4th 1039, 1045 (5th Cir. 2025).
[78] *Id.* at 1046.
[79] *Id.* at 1040 & 1044–45.

the Court need not address whether the Government has established a founding-era tradition of permanently disarming a person who committed an offense as a juvenile because the Fifth Circuit has already determined that there is a founding-era tradition of disarming individuals like Banks, who are serving criminal sentences and the Court is bound by that precedent.[80]

## IV. CONCLUSION

For the reasons set forth above, the Motion to Dismiss Indictment, filed by defendant, Nelson Banks,[81] is **DENIED**.

New Orleans, Louisiana, August 24, 2026.

**WENDY B. VITTER**
**United States District Judge**

[80] Bound by that precedent, the Court ends its Analysis and does not address the Government's alternative arguments raised in its brief. *See* R. Doc. 44.
[81] R. Doc. 39.